UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID ELGERSMA, | Case No. 24-cv-4458 (LMP/DJF) |
| Plaintiff, | |
| v. | ORDER DISMISSING CASE |
| NICS (part of the FBI), SCHEELS, CABELA'S, and FLEET FARM, | |
| Defendants. | |

David Elgersma, pro se.

Erin Secord, Assistant United States Attorney, **United States Attorney's Office, Minneapolis, MN**, for Defendant NICS.

On April 17, 2024, Plaintiff David Elgersma brought suit in Minnesota state court against the Federal Bureau of Investigation's ("FBI") National Instant Criminal Background Check System ("NICS"), along with Scheels, Cabela's, and Fleet Farm, after the three firearm dealers refused to sell him a firearm. ECF No. 1-1 at 4. On December 11, 2024, NICS removed the case to federal court. NICS now moves to dismiss Elgersma's complaint for lack of subject-matter jurisdiction, or, alternatively, for failure to state a claim upon which relief can be granted.[1] For the following reasons, the Court finds that it has

---

[1] Scheels, for its part, moves to strike Elgersma's complaint. ECF No. 38. But Scheels, Fleet Farm, and Cabela's were dismissed from this action before it was removed to federal court. *See Elgersma v. NICS, FBI*, 62-CV-24-2200, Index #26 (Minn. Dist. Ct. Aug. 19, 2024). Under 28 U.S.C. § 1450, all "orders . . . had in [a removed] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." This means that "[a]fter removal, the federal court 'takes the case up where the

subject-matter jurisdiction over Elgersma's claims but nonetheless dismisses Elgersma's complaint for failure to state a claim.

## BACKGROUND

Federal law requires that before a firearm dealer sells a firearm to an individual, the individual must first pass a background check. *Roehning v. United States*, No. 22-cv-0823 (PJS/TNL), 2023 WL 2666468, at *1 (D. Minn. Mar. 28, 2023) (citing 18 U.S.C. § 922(t)). To satisfy that requirement, the dealer typically "requests an instant background check" from NICS, a system maintained by the FBI. *Id.* (citing 28 C.F.R. §§ 25.3, 25.6). After receiving such a request, NICS automatically "searches for the prospective purchaser's identity in three national databases . . . to determine if the prospective purchaser is disqualified from acquiring a firearm by a felony conviction or by some other reason." *Id.* (citing 28 C.F.R. § 25.6(c)(1)). NICS sends one of three results to the dealer: proceed, delay, or deny. *Id.* (citing 28 C.F.R. § 25.6(c)(1)).

A "deny" response indicates that the prospective purchaser or transferee is "prohibited from receiving a firearm" because it would violate federal or state law. ECF No. 24 ¶ 11; 28 C.F.R. § 25.6(c)(1)(iv)(C). A "delay" response indicates that the FBI "requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 C.F.R. § 25.6(c)(1)(iv)(B). When

---

State court left it off.'" *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 (1974) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)). Consequently, Scheels, Cabela's, and Fleet Farm are no longer parties to this action, and the Court will dismiss Scheels' motion as moot.

a dealer gets a delay response, the dealer may not sell a firearm to the individual until either NICS sends a "proceed" response or three days pass, whichever occurs first. *Id.*

Prospective firearm purchasers have several options when they are denied or delayed the right to purchase a firearm by NICS. First, they may "'appeal the 'accuracy of the record upon which the denial is based' directly with the FBI." *Roehning*, 2023 WL 2666468, at *1 (quoting 28 C.F.R. § 25.10(c)). Second, if the denial or delay was erroneous, the individual may apply to the FBI for a Voluntary Appeal File, which is a record of the individual's identity maintained by the FBI and from which the FBI provides a Unique Personal Identification Number ("UPIN"). *Id.* (citing 28 C.F.R. § 25.10(g)). The UPIN helps prevent future erroneous denials (or delays) because it allows NICS to automatically refer to a previously conducted investigation. *Id.* Finally, any "person denied a firearm" pursuant to a background check may "bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States . . . for an order directing that the erroneous information be corrected or that the transfer be approved." 18 U.S.C. § 925A.

Elgersma's state court complaint alleged that he attempted to purchase firearms from Scheels, Cabela's, and Fleet Farm, but that each firearm dealer denied him after NICS returned a "delay" response. ECF No. 1-1 at 4. Elgersma alleged that the "delay" is erroneous because NICS has no legal basis to return the delay response. *Id.* He further alleged that Scheels, Cabela's, and Fleet Farm all refused to sell him a firearm as a result of the delay response and, in doing so, discriminated against him. *Id.* at 4–5. Elgersma demanded that NICS remove the delay. *Id.* at 5.

On August 19, 2024, the state court dismissed Scheels, Cabela's, and Fleet Farm from the case because Elgersma had failed to state a claim against them. *See Elgersma v. NICS, FBI*, 62-CV-24-2200, Index #26 (Minn. Dist. Ct. Aug. 19, 2024).[2] And on December 11, 2024, NICS removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446. ECF No. 1. NICS now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction and that, if not, Elgersma otherwise fails to state a claim upon which relief can be granted under Rule 12(b)(6). ECF Nos. 20 and 21 at 10–15.

## ANALYSIS

**I.  Subject-Matter Jurisdiction**

NICS first argues that the Court lacks subject-matter jurisdiction over Elgersma's claim, citing sovereign immunity. *Id.* at 10–13.

Sovereign immunity bars private actions against the United States and its agencies unless immunity was expressly waived for the type of claim being raised. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011). "If sovereign immunity applies, the Court lacks subject matter jurisdiction, and the matter must be dismissed without prejudice." *Kerber v. Carver Cnty. Farm Serv. Agency*, No. 18-cv-907 (MJD/BRT), 2018 WL 6529494, at *2 (D. Minn. Dec. 12, 2018) (citing *Roth v. United States*, 476 F. App'x 95, 95 (8th Cir. 2012)).

---

[2]  The Court takes judicial notice of the state court order because it is a public state-court record. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

4

NICS argues that "Elgersma is pursuing one claim under" 18 U.S.C. § 925A, which authorizes a cause of action against the United States by a "person denied a firearm" pursuant to a NICS background check. ECF No. 21 at 10. NICS correctly points out that, because the statute authorizes only actions by persons "denied" a firearm, "individuals who were not denied a firearm by the federal government may not hale the United States into court." *Sedita v. United States*, 763 F. Supp. 3d 63, 72 (D.D.C. 2025) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Here, Elgersma claims only that NICS returned a "delay" response when he sought to purchase a firearm. ECF No. 1-1 at 4. But a delay response does not constitute a denial. *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 807 F. Supp. 2d 362, 374 (D. Md. 2011) ("Notably, the statute only provides a remedy for an improper 'denial.' If a request to purchase a firearm is merely subject to a delay . . . the statute allows the sale to proceed if the FBI has not denied the request within three business days."). Accordingly, for a plaintiff to state a claim under § 925A, "he must demonstrate that the NICS improperly provided a 'Denied' response." *Id.*; *see Kuntz v. Dep't of Just.*, No. 1:19-cv-70, 2020 WL 6322858, at *8 (D.N.D. Mar. 6, 2020) (noting that no regulation holds that "an individual subject to a 'delayed' NICS response is consequently 'denied' from obtaining a firearm"), *report and recommendation adopted*, 2020 WL 6324341 (D.N.D. Mar. 24, 2020).

Although Elgersma contends that the delay response has prompted Scheels, Cabela's, and Fleet Farm independently to decide *never* to sell him a firearm, that is each firearm dealer's own decision and not attributable to NICS itself. *Ross*, 807 F. Supp. 2d at 374 (citing 28 C.F.R. § 25.6(c)(1)(iv)(B)) (noting that if NICS does not deny a purchase

request within three days after a "delay" response is provided to a dealer, "the subsequent sale of the firearm appears to be at the discretion of the" dealer); *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)) ("A third party's 'legitimate discretion' breaks the chain of constitutional causation."). Therefore, because NICS has not denied Elgersma the ability to buy a firearm, NICS is correct that Elgersma cannot pursue relief under Section 925A.

The challenge for NICS is that Elgersma *does not* pursue relief under Section 925A. Nowhere in his complaint does he cite that statute; instead, he repeatedly cites the Second Amendment in complaining that NICS's delay response "is taking away [his] 2nd Amendment right to purchase a firearm." ECF No. 1-1 at 4–5. That NICS might wish to recharacterize his claim as one seeking relief under Section 925A does not mean that the Court can disregard Elgersma's apparent decision not to. *Susman v. Sullivan*, No. 24-cv-1281-LJV, 2025 WL 575515, at *10 (W.D.N.Y. Feb. 21, 2025) (refusing to analyze a case under Section 952A because the plaintiff "did not bring [the] case under section 925A," but instead asserted more general violations of his Second Amendment rights).

When Elgersma's complaint is properly construed to allege a general Second Amendment violation, no subject-matter jurisdiction issues arise because the relief Elgersma primarily seeks is equitable; he asks that the Court order NICS to stop providing a delay response. ECF No. 1-1 at 5. And "when a plaintiff is proceeding in equity as such, sovereign immunity is no impediment to specific relief." *Sedita*, 763 F. Supp. 3d at 73; *see also Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003) (citing 5 U.S.C. § 702) ("[T]he United States does not enjoy immunity from [an] injunctive-relief action, because section 702 of

6

the Administrative Procedure Act (APA) expressly waives sovereign immunity as to any action for nonmonetary relief brought against the United States."). Accordingly, the Court denies NICS's motion to dismiss for lack of subject-matter jurisdiction.

## II. Failure to State a Claim

NICS alternatively argues that "[t]o the extent Mr. Elgersma's claim is framed under the Second Amendment," it must be dismissed for failure to state a claim. ECF No. 21 at 13–14. The Court agrees.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the complaint "need not set forth detailed factual allegations, or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795–96 (8th Cir. 2021) (internal quotation marks omitted) (citation omitted). When considering a Rule 12(b)(6) motion, a court must "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in favor of the nonmoving party." *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (internal quotation marks omitted) (citation omitted). In addition, a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Nevertheless, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

Here, Elgersma fails to state a claim because it is well-established that the NICS system and background checks in general are constitutional. Elgersma is correct that he has a Second Amendment right to purchase a firearm, but "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The federal government may, therefore, require an individual to undergo a background check in connection with purchasing a firearm. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 80 (2022) (Kavanaugh, J., concurring) (noting that rules which "require a license applicant to undergo fingerprinting, a background check, [or] a mental health records check . . . are constitutionally permissible"); *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024) ("*Bruen* and *Heller* make clear that background checks preceding firearm sales are presumptively constitutional."); *Worth v. Jacobson*, 108 F.4th 677, 688 (8th Cir. 2024) (*Bruen* stands for the proposition that a restriction on firearms is not unconstitutional "[i]f the regulation is consistent with the Nation's historical tradition of firearm regulation").

Nevertheless, despite the NICS background check's presumptive constitutionality, recent courts—consistent with *Bruen*—have noted that an otherwise constitutional practice may become unconstitutional "where it is 'put toward abusive ends.'" *McRorey*, 99 F.4th at 837 (quoting *Bruen*, 597 U.S. at 38 n.9); *Sedita*, 763 F. Supp. 3d at 80 ("[W]hen a particular licensing regime diverges from [the United States'] tradition [of firearm regulation]—perhaps by becoming 'abusive'—it infringes on the Second Amendment."). But that is where Elgersma's complaint falls short: he does not allege or state facts suggesting that the NICS system is abusive. In *Bruen*, the Court identified examples of

8

potentially abusive regulatory practices such as "lengthy wait times" or "exorbitant fees." *Bruen*, 597 U.S. at 38 n.9. But under the NICS regime, "[t]here is little risk" of either concern. *McRorey*, 99 F.4th at 839. That is because, in Elgersma's case, at most he would have to wait three days before a firearm dealer would be authorized to sell him a firearm upon receiving a "delay" response from a NICS inquiry. *See* 28 C.F.R. § 25.6(c)(1)(iv)(B). A three-day wait is not "abusive."

*McRorey* met this argument head on. There, prospective firearm purchasers under the age of 21 argued that a separate but similar provision of the federal background check scheme was unconstitutional. 99 F.4th at 835–36. For purchasers under the age of 21, federal law slightly alters the NICS system in two ways. First, in the event that NICS provides an initial delay response, NICS need not complete its subsequent investigation within three days; instead, it merely must notify a firearm dealer within three days that it has "cause for further investigation for disqualification of the applicant." *Id.* at 835 (citing 18 U.S.C. § 922(t)(1)(C)(ii)). Second, if NICS notifies the dealer of cause for further investigation, NICS must complete that further investigation within 10 days. *See id.* (citing 18 U.S.C. § 922(t)(1)(C)(iii)). In short, "by operation of law, the maximum duration a dealer must wait under the Act while a background check remains pending is . . . 10 business days." *Id.* at 839. If NICS has not definitively denied a prospective purchaser by then, the dealer is free to complete the sale. *See id.* But *McRorey* explained that it "is plain as can be that some amount of time for background checks is permissible," and held that "a period of 10 days does not qualify" as abusive. *Id.* at 839–40. The same logic applies here where, at most, Elgersma would have to wait three days.

9

To the extent that Elgersma asserts that the decisions of Scheels, Fleet Farm, and Cabela's not to sell him a firearm is attributable to NICS and results in the NICS system becoming abusive, he is mistaken. Crucially, NICS itself does not require anything more than a three-day delay for someone like Elgersma. *See* 28 C.F.R. § 25.6(c)(1)(iv)(B). And a private firearm dealer's decision not to proceed with a firearm sale after the statutory waiting period has elapsed is an exercise of the dealer's "legitimate discretion" which cannot be attributed to "any provision of the law" and "breaks the chain of constitutional causation." *McRorey*, 99 F.4th at 839 (citation omitted).

In short, Elgersma fails to state a Second Amendment claim against NICS because he has not sufficiently pleaded that the NICS delay he receives constitutes an abusive practice. Nor can he. Accordingly, the Court grants NICS's motion to dismiss for failure to state a claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. NICS's Motion to Dismiss (ECF No. 20) is **GRANTED**;

2. Scheels' Motion to Strike (ECF No. 38) is **DISMISSED AS MOOT**;

3. Elgersma's Motion to Have a Hearing (ECF No. 49) is **DENIED;**[3] and

---

[3] It is within the Court's discretion whether to schedule a hearing on a dispositive motion. D. Minn. LR 7.1(c). The Court concludes that a hearing is unnecessary in this case and denies Elgersma's request accordingly.

4. Elgersma's Complaint (ECF Nos. 1 & 1-1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 10, 2025                                  *s/Laura M. Provinzino*
                                                                   Laura M. Provinzino
                                                                   United States District Judge